(No. 21618.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EVANS A. ANDERSON, Plaintiff in Error.

*Opinion filed December 23, 1932.*

KNIGHT, PENNY & LUPTON, (THOMAS F. RYAN, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, WILLIAM D. KNIGHT, State's Attorney, J. J. NEIGER, ALFRED B. LOUISON, and KARL C. WILLIAMS, for the People.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

This cause is here on writ of error to review the record of the conviction of plaintiff in error, Evans A. Anderson, in the circuit court of Winnebago county for the crime of embezzlement of $17,970 from the Security First Mortgage Company, a corporation.

Plaintiff in error presented to the court a motion for change of venue, supported by approximately seventy-five affidavits signed by residents of various townships in Winnebago county. The motion gave as the reason for its presentation the fact that the plaintiff in error was an officer in the Security National Bank and in the Security First Mortgage Company; that these two organizations were located in the same building, and interlocked in so far as management and employees were concerned; that in the public mind these two organizations were the same; that in the summer of 1931 the Security National Bank was forced by financial troubles to close its doors; that the bank had many stockholders throughout the county and a vast number of depositors, and in addition the mortgage company had about 300 stockholders in Winnebago county; that at the time of the closing of the Security National Bank two other financial institutions were forced to close their doors in Rockford; that because of these bank failures there was aroused among the inhabitants of Winnebago county a definite prejudice against persons connected with banking and financial institutions and against the plaintiff in error; that the newspapers within the county carried many articles, editorials and pictures purporting to give facts about the banks and the Security First Mortgage Company, implying in those articles fraud and embezzlement; that rumors spread over the county concerning the plaintiff in error's guilt; that the local broadcasting station KFLV broadcasted purported statements of fact concerning the indictment; that the stockholders of the mortgage

company referred to the plaintiff in error as a confessed embezzler; that on November 18, 1931, the stockholders of the mortgage company held a meeting at the Faust Hotel, in Rockford, attended by some 230 persons; that at the meeting the plaintiff in error's relations with the mortgage company were discussed, that being the purpose for which the meeting had been called; that at the meeting he was called and referred to as an embezzler; that one of the directors, in a talk lasting for one-half hour, constantly referred to him as an embezzler; that this meeting created great prejudice against him, and the bias it created was passed on by those who were present to others throughout the county, and that because of these things a fair and impartial trial could not be had in Winnebago county. The affidavits accompanying this motion were, in substance, that the affiants knew of the newspaper articles concerning the plaintiff in error; that they caused many remarks unfavorable to him; that great prejudice had been aroused; that the affiants had heard many expressions of contempt for the plaintiff in error; that a general feeling of hatred prevailed against him, and that the local radio station had broadcasted purported facts about the plaintiff in error, and that because of these things he could not, in the opinion of the affiants, receive a fair and impartial trial.

The State's attorney filed an answer to the petition for a change of venue, in which he denied that by reason of the matters set up in the petition, or because of any fact, there had been any unusual or undue publicity as to the facts in the case, or that by reason of any printed articles mentioned in or attached to the petition, or by reason of speeches at stockholders' meetings, or of conversations or talks made over the radio station referred to, or otherwise, the inhabitants of Winnebago county had become, or were then, so prejudiced against the defendants, or either of them, either because they were or had been officers of the Security National Bank or of the Security First Mortgage Company,

or of both said corporations, or because they stand charged with the embezzlement or larceny of funds of the mortgage company, or because of any facts, a fair and impartial jury to try the case cannot or will not readily be obtained in the county of Winnebago or that the defendants cannot or will not be accorded and receive a fair and impartial trial in said county. The answer was supported by over one hundred affidavits from persons representing every township in the county.

Upon an application for a change of venue alleging that the inhabitants of the county are prejudiced against the defendant, the issue to be determined is not whether the evidentiary facts set forth in the petition are proved, but whether, upon the showing made, there is reasonable ground for fear that the alleged prejudice actually exists and that the defendant will not receive a fair and impartial trial. (*People* v. *Birger,* 329 Ill. 352; *People* v. *Fricker,* 320 id. 495; *People* v. *Murphy,* 276 id. 304; *Jamison* v. *People,* 145 id. 357.) Upon the petition and affidavits filed by plaintiff in error and the traverse and counter-affidavits filed by the prosecution it did not appear that a prejudice existed in the minds of the inhabitants of Winnebago county sufficient to raise a reasonable apprehension that plaintiff in error would not receive a fair and impartial trial in that county.

Winnebago county is a large county, with 117,373 inhabitants. One of the main contentions set up in plaintiff in error's affidavit is the prejudicial effect of the speech made by one of the directors at the meeting of the stockholders of the mortgage company. That speech could have had little effect upon the issue here, as the hearers and stockholders of the company whose funds are alleged to have been embezzled would not have been competent jurors had no speech been made. No difficulty was experienced on the trial in getting a fair and impartial jury from the special panel of twenty-five jurors called to court for the case.

Plaintiff in error's challenges do not seem to have been exhausted, and the entire time devoted to the selection and impaneling of the jury occupied less than a day of the court's time.

The indictment consists of three counts, each closing with the following words purporting to allege value: "that is to say, funds of the said Security First Mortgage Company to the amount of one hundred twelve thousand five hundred nine and 83/100 dollars ($112,509.83), of the value of one hundred twelve thousand five hundred nine and 83/100 dollars ($112,509.83), of the money, funds and property of said Security First Mortgage Company, a corporation then and there being found, feloniously take, steal and carry away." On motion to quash the indictment, it was, and now is, contended that this allegation was insufficient because the money was not alleged to be current or lawful money of the United States but only that it was money. Where any part of the punishment depends on the value of the property such value should be alleged in the indictment and proven as alleged. By the embezzlement section of the statute under which the indictment in this case was found, the acts falling within its purview are made acts of larceny and those found guilty under that section are deemed guilty of larceny. Larceny is divided into two classes for the purpose of punishment, the one being a misdemeanor and the second a felony, which classification is based upon the value of the property involved. The only purpose in requiring the indictment to state the value of the property embezzled is to have it properly determined that the property had some value and that the value was either more or less than $15, and in *People* v. *Preble*, 316 Ill. 233, it was held that the particular denominations and descriptions of the money embezzled were not essential averments in the indictment. Paragraph 217 of the Criminal Code provides that in prosecutions for the offense of embezzling money, checks or other securities it

shall be sufficient to allege generally in the indictment, the embezzlement, fraudulent conversion, or taking with such intent, of funds of a company to a certain value or amount, without specifying any particulars of such embezzlement. Paragraph 389 of the Criminal Code provides that every person convicted of larceny, if the property stolen exceeds the value of $15, shall be imprisoned in the penitentiary. The word "dollars" is used in the statute, and not "dollars of the current and lawful money of the United States." It would seem to be too clear to require any argument that when the word "dollars" is found in an indictment based on the larceny or embezzlement statute, it should be construed to have the same meaning as the word "dollars" in the larceny and embezzlement statute. The court did not err in refusing to quash the indictment.

It is urged as error that the court refused to instruct the jury to find plaintiff in error not guilty. Prior to the commencement of the trial the State's attorney was required to file a bill of particulars containing several specifications, among them "an item of $17,970 as of date January 15, 1930, or thereabouts. This item is represented by and included in debit memorandum." The jury by its verdict found the value of the property embezzled to be $17,970, and as none of the other specifications, singly or collectively, approximated this sum, it will only be necessary to consider the evidence with reference thereto.

Plaintiff in error and Truman A. Johnson, who was jointly indicted with him, were, respectively, secretary and president of the First Mortgage Security Company, and, respectively, cashier and president of the Security National Bank. In regard to the $17,970 transaction, they each on October 31, 1931, signed, and before a notary public swore to, the following statement:

"We, Truman Johnson and Evans A. Anderson, each individually and for himself, herein make the following statement: We were instrumental in forming a company known as the Broadway

Trust for the purpose of buying and selling stocks and bonds, not on margins or futures but for cash and outright, and with that understanding interested E. W. Carlson, Abel Erickson, and others, by paying in $500 each and $50 each per month thereafter, which money was to be used for the benefit of all for the purchase of certain stocks or bonds outright; that each did pay in their $500 and certain members paid in their monthly payments or a part thereof and the money was used to buy certain stocks, but instead of being used to purchase stocks outright, stocks were purchased repeatedly by E. A. Anderson, with the knowledge of Truman Johnson, on futures and not paid for, and that losses were incurred from time to time, and $17,000 was borrowed from the Security National Bank by Truman Johnson and Evans A. Anderson, acting for the Broadway Trust, without the knowledge or consent of E. W. Carlson and Abel Erickson, and no report of any kind was made to them by either Truman Johnson or Evans A. Anderson, and that prior to the closing of said bank in the early part of the year of 1931 this account was transferred from the Security National Bank to the Security First Mortgage Company, where it has been since that time for the purpose of getting the account out of the Security National Bank, and that on August 31, 1931, a note for $10,017 was taken from the envelope carried in the bond account in the mortgage company and transferred to the notes-receivable account and another note for $7970 placed in the notes-receivable account of the Security First Mortgage Company, and that all of the stocks that remained in the Broadway Trust were certain shares of Gardner Motor Company and one or two other stocks in the total value of $3200, which have recently been placed in the Security First Mortgage Company deposit box in the safety vault of the Security National Bank and credit taken on the note to the Security First Mortgage Company of $3200, this being done during the month of August, 1931, without the knowledge or consent of any of the directors of the Security First Mortgage Company or the Security National Bank or E. W. Carlson or Abel Erickson, holders in the Broadway Trust.

TRUMAN JOHNSON,
EVANS A. ANDERSON."

The Broadway Trust was never incorporated and no one was given any authority to borrow money or sign the name "Broadway Trust." The testimony shows that plaintiff in error and Johnson borrowed money from the Security National Bank in the name of the Broadway Trust without authority from anyone, and discharged the obliga-

tions of the Broadway Trust thus created, to the extent of $17,970, with funds of the Security First Mortgage Company without the knowledge or consent of the directors of the company. The court did not err in denying the motion to instruct the jury to find plaintiff in error not guilty, and under the evidence in this case the jury could not reasonably have found a verdict other than that of guilty.

It is claimed that the court erred in giving to the jury an instruction ending with the words, "you have no reasonable doubt from the evidence of the guilt of the defendant in manner and form as charged in the indictment, then you are convinced of the guilt of the defendant beyond a reasonable doubt and to a moral certainty," without restricting the jury to matters set forth in the bill of particulars. In instructions given at the request of plaintiff in error the indictment was likewise referred to without mentioning the bill of particulars. However, plaintiff in error was not prejudiced thereby, as the $17,970 item which the jury found the plaintiff in error guilty of embezzling was mentioned in the bill of particulars, and no evidence was received by the court as to any embezzlements not specified in the bill of particulars.

In the bill of particulars filed by the State's attorney there were three items which were barred by the Statute of Limitations. The court gave instructions directing the jury to the bill of particulars without limiting the jury to the consideration of those items therein not barred by the Statute of Limitations. No evidence was received as to the three items barred by the Statute of Limitations and no prejudice could arise by reason of the failure to refer to them in the instructions.

The State's attorney during the course of his argument made reference to other crimes not committed by plaintiff in error and referred to the commission of crimes generally, to which objections were overruled, but later the court stated to the jury: "The jury will entirely disregard any

reference to other crimes. I think you have gone a little too far as it is. I am going to sustain the objection to any further comment upon other crimes." It is a fundamental rule that arguments must be confined to matters properly in the record. (*People* v. *McMahon*, 244 Ill. 45.) In this case there was nothing inflammatory about the remarks and the jury were instructed to entirely disregard them.

We have carefully examined all the errors assigned, and from the entire record we are satisfied that there was no prejudicial error committed on the trial and that the jury would have been derelict in their duty had they found the defendant not guilty.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*